IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **GOLDEN GATE NATIONAL SENIOR CARE, LLC,** <br> **GGNSC LANSDALE, LP, doing business as "GOLDEN LIVING CENTER – LANSDALE,"** <br> **GPH LANSDALE LP,** <br> **GPR LANSDAL, GP, LLC,** <br> **GGNSC HOLDINGS, LLC,** <br> **GGNSC EQUITY HOLDINGS, LLC,** <br> **GGNSC ADMINISTRATIVE SERVICES, LLC,** <br> **GGNSC CLINICAL SERVICES, LLC, and** <br> **GOLDEN GATE ANCILLARY, LLC,** <br>     Petitioners, <br><br> v. <br><br> **LINDA KILLIAN,** <br>     Respondent. | **CIVIL ACTION** <br><br><br><br> NO. 17-2732 |

**DuBois, J.**                                **August 6, 2018**

## M E M O R A N D U M

### I. INTRODUCTION

Petitioners filed this action under the Federal Arbitration Act, 9 U.S.C § 1, *et seq.* ("FAA") to enforce an alternative dispute resolution agreement executed in connection with Linda Killian's ("respondent") admission to the Golden Living – Lansdale ("Golden Living") facility on July 4, 2015. Respondent filed a Complaint against petitioners in the Montgomery County Court of Common Pleas asserting, *inter alia*, that petitioners—who own, operate, and/or manage Golden Living—failed to provide respondent with adequate care, thereby causing her to fall and suffer injuries. Presently before the Court is Petitioners' Motion to Compel Arbitration. For the reasons that follow, the Motion is granted.

## II. BACKGROUND

On June 30, 2015, respondent fell in her residence at Schwenkfeld Manor, an independent living facility in West Lansdale, Pennsylvania. Killian Dep. 7:9–14, 44:3–10, Nov. 29, 2017. Respondent, who was 67-years-old when she fell, pushed a call button that sent for an ambulance. Killian Dep. 83:12–16. The ambulance crew arrived, placed respondent on her couch, and left after she decided not to take her to a hospital. Killian Dep. 83:16–21. After realizing that she could not get off the couch, respondent again called for an ambulance and was taken to Lansdale Hospital. Killian Dep. 83:22–84:10. At the time respondent was admitted to Lansdale Hospital on June 30, 2015, she unable to sign admission forms "due to [her] condition." Resp't's Br., Ex. D, at 10.

On March 20, 2013, respondent executed a Power of Attorney appointing her friends Linda and Steve Reiff as her agents. Killian Dep. 34:18–36:15. The Reiffs were on vacation when respondent was admitted to Lansdale Hospital. Killian Dep. 81:1–83:1.

Respondent was discharged from Lansdale Hospital and admitted to Golden Living for rehab on July 4, 2015. Killian Dep. 84:5–19, 91:18–20. At her deposition, she testified that she "was so drugged at that point in time, [she had] no idea what [she] thought or felt." Killian Dep. 91:23–34. Her admission records from Golden Living state that she was alert, able to make herself understood, and able to understand others. Resp't's Br., Ex. D, at 10. However, those records also state that she suffered from memory problems and needed assistance with decisions at that time. Resp't's Br., Ex. D, at 10. Her medical records from July 5, 2015—the day after she was admitted to Golden Living—state that she was "alert and oriented . . . with some confusion." Resp't's Br., Ex. D, at 8. At the time she was admitted to Golden Living, respondent suffered from anxiety, asthma, hyperparathyroidism, anemia, Parkinson's disease,

and depressive disorder. Resp't's Br., Ex. D, at 3, 10. She was diagnosed with Parkinson's disease around 2011. Killian Dep. 8:23–9:9.

On July 4, 2015, respondent met with Crystal Morgan ("Morgan"), the Director of Admissions at Golden Living, at Lansdale Hospital and again at Golden Living. Morgan Dep. 15:8–12, 59:16–20, Nov. 29, 2017. Before meeting with a prospective resident, Morgan is told by a social worker or physician at the hospital from which the resident was discharged whether the resident has the capacity to make decisions for himself. Morgan Dep. 34:18–20, 58:10–14. If a resident has the capacity to make his own decisions, Morgan is given permission to speak directly with the resident, even if the resident executed a power of attorney. Morgan Dep. 34:18–20.

Respondent testified that she remembered only "shadows" of her admission to Golden Living at the time of her deposition, Killian Dep. 47:13. In contrast, Morgan testified that she remembered meeting with respondent at Lansdale Hospital and at Golden Living on July 4, 2015, Morgan Dep. 59:14–20. According to Morgan, respondent "seem[ed] to understand what [Morgan was] talking about" and engaged in conversation. Morgan Dep. 74:12–22.

Within an hour of respondent's arrival at Golden Living, Morgan reviewed the admission paperwork with her. Morgan Dep. 70:23–71:2. Respondent signed all of the documents in the admission packet, including the Alternative Dispute Resolution Agreement ("ADR Agreement" or "Agreement"). Pet'rs' Mot., Ex. C and D; Morgan Dep. 54:21–55:15. At issue in Petitioners' Motion to Compel Arbitration is whether the ADR Agreement is valid and enforceable.

### III. PROCEDURAL BACKGROUND

On May 17, 2017, respondent filed a Complaint against petitioners in the Montgomery County Court of Common Pleas, Docket No. 2017-10000 ("Montgomery County case"). On

3

June 16, 2017, petitioners filed in this Court a Petition for Order Compelling Arbitration, seeking (1) an order compelling respondent to arbitrate her claims against petitioners and staying the Montgomery County case and (2) a declaratory judgment that the ADR Agreement is valid and enforceable and applicable to the parties' dispute. Thereafter, on June 19, 2017, petitioners filed preliminary objections to the Complaint in the Montgomery County case. Respondent then filed an Amended Complaint in that case, and petitioners again filed preliminary objections on July 26, 2017. Respondent's Amended Complaint asserts, *inter alia*, that petitioners failed to provide respondent with adequate care while she was at Golden Living, causing her to fall and suffer severe pain, abrasions, a hip contusion, and interference with physical therapy. Pet'rs' Mot., Ex. E. ¶ 108.

On September 19, 2017, respondent filed her Answer in this case. Pursuant to the Court's Order dated December 1, 2017, petitioners filed a Motion to Compel Arbitration on January 19, 2018, respondent filed her Response on February 2, 2018, and petitioners filed a Reply on March 2, 2018. The Motion to Compel Arbitration is thus ripe for review.

**IV.    LEGAL STANDARD**

After the parties conduct limited discovery concerning the validity of an ADR agreement, district courts use the Federal Rule of Civil Procedure 56 summary judgment standard to decide a motion to compel arbitration. *Guidotti v. Legal Helpers Debt Resolution, LLC*, 716 F.3d 764, 774–76 (3d Cir. 2013). Under that standard, a court will grant a motion for summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is material when it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of fact is genuine "if the evidence is such that

a reasonable jury could return a verdict for the nonmoving party." *Id.* "[T]he judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether . . . there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.* at 249. The existence of a "mere scintilla" of evidence in support of the nonmoving party is insufficient. *Id.* at 252. In considering a motion for summary judgment, "the court is required to examine the evidence of record in the light most favorable to the party opposing summary judgment, and resolve all reasonable inferences in that party's favor." *Wishkin v. Potter*, 467 F.3d 180, 184 (3d Cir. 2007).

"In the event that summary judgment is not warranted because 'the party opposing arbitration can demonstrate, by means of citations to the record,' that there is 'a genuine dispute as to the enforceability of the arbitration clause,' the 'court may then proceed summarily to a trial regarding "the making of the arbitration agreement or the failure, neglect, or refusal to perform the same," as Section 4 of the FAA envisions.'" *Guidotti*, 716 F.3d at 774–76 (quoting *Somerset Consulting, LLC v. United Capital Lenders, LLC*, 832 F.Supp.2d 474 (E.D. Pa. 2011) (quoting 9 U.S.C. § 4)).

V. **APPLICABLE LAW**

Questions or arbitrability are governed by the FAA. "The FAA manifests 'a congressional declaration of a liberal federal policy favoring arbitration agreements.'" *Quillon v. Tenet HealthSystem Phila., Inc.*, 673 F.3d 221, 228 (3d Cir. 2012) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*, 470 U.S. 1, 24 (1983)). The Act "requires courts to place arbitration agreements 'on equal footing with all other contracts.'" *Kindred Nursing Ctrs. Ltd. P'ship v. Clark*, 137 S.Ct. 1421, 1424 (2017) (quoting *DIRECTV, Inc. v. Imburgia*, 136 S.Ct. 463, 465 (2015)). In that regard, arbitration agreements are "'valid, irrevocable, and enforceable,

5

save upon such grounds as exist at law or in equity for the revocation of any contract.'" *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (quoting 9 U.S.C. § 2)). In deciding a motion to compel arbitration under the FAA, courts consider "'(1) whether there is a valid agreement to arbitrate between the parties and, if so, (2) whether the merits-based dispute in question falls within the scope of that valid agreement.'" *Flintkote Co. v. Aviva PLC*, 769 F.3d 215, 220 (3d Cir. 2014) (quoting *Century Indem. Co. v. Certain Underwriters at Lloyd's, London*, 584 F.3d 513, 527 (3d Cir. 2009)).

## VI. DISCUSSION

Respondent does not contest that she signed the ADR Agreement and that the Montgomery County case is within the scope of the Agreement. Rather, respondent objects to validity and enforceability of the ADR Agreement on two grounds: (1) respondent lacked the requisite capacity to execute the Agreement; and (2) the contract is unconscionable. The Court addresses each argument in turn and rejects both defenses to the validity and enforceability of the ADR Agreement.

### A. Capacity

Under Pennsylvania law, an adult party who enters into an agreement is presumed competent.[1] *Estate of McGovern v. State Emps' Ret. Bd.*, 517 A.2d 523, 526 (Pa. 1986) (citing *Taylor v. Avi*, 415 A.2d 894, 896 (Pa. Super. Ct. 1979)), *overruled on other grounds by Leon E. Wintermyer, Inc. v. WCAB (Marlowe)*, 812 A.2d 478 (Pa. 2002). The party contesting competence has the burden of demonstrating mental incompetence with "clear, precise and convincing" evidence. *Elliott v. Clawson*, 204 A.2d 272, 273 (Pa. 1964). A mentally incompetent person is one who cannot understand "the nature and consequences of the

---

[1] Like the Pennsylvania Supreme Court, the Court uses the words "capacity" and "competence" interchangeably.

transaction." *Forman v. Pub. Sch. Emps.' Ret. Bd.*, 778 A.2d 778, 780 (Pa. Commw. Ct. 2001). The critical inquiry is whether a person was competent "at the very time" the instrument was executed. W*eir by Gasper v. Estate of Ciao*, 556 A.2d 819, 824 (Pa. 1989). The person's words and conduct are most relevant to the analysis. *Id.* Moreover, testimony by individuals who "observed the alleged incompetent on the date in question" is entitled to greater weight than testimony based upon prior or subsequent observations. *Id.*

"[M]ere weakness of intellect resulting from sickness or old age is not legal grounds to set aside an executed contract if sufficient intelligence remains to comprehend the nature and character of the transaction, and no evidence of fraud, mutual mistake or undue influence is present." *Taylor*, 415 A.2d at 897. Furthermore, "[f]ailure of memory does not prove incapacity, unless it is total or so extended as to make incapacity practically certain." *In re Lawrence's Estate*, 132 A. 786, 789 (Pa. 1926).

In support of her incapacity defense, respondent relies on her medical records from Lansdale Hospital and Golden Living. She argues that her medical conditions and medication interfered with her ability to communicate and comprehend information such that she did not understand the nature and consequences of signing the ADR Agreement. At the time respondent was admitted to Lansdale Hospital on June 30, 2015, she was unable to sign admission forms "due to [her] condition." Resp't's Br., Ex. D, at 2. At her deposition, respondent testified that when she was admitted to Golden Living on July 4, 2015, "I was so drugged at that point in time, I have no idea what I thought or felt." Killian Dep. 91:23–24. Her admission records to Golden Living are to the contrary; they state that she was alert, able to make herself understood, and able to understand others. Resp't's Br., Ex. D, at 10. However, the admission records also state that respondent suffered from memory problems and needed assistance with decisions that time. Her

7

records from July 5, 2015, state that she was "alert and oriented . . . with some confusion". Resp't's Br., Ex. D, at 8. At the time she was admitted to Golden Living, respondent suffered from anxiety, asthma, hyperparathyroidism, anemia, Parkinson's disease, and depressive disorder. Resp't's Br., Ex. D, at 3, 10.

Examining the evidence in the light most favorable to respondent, the Court concludes that there is no genuine issue of material fact as to respondent's capacity and respondent has failed to meet her burden regarding her incapacity defense. Respondent's medical records demonstrate that on the day she was admitted to Golden Living, she was alert, able to make herself understood, and able to understand others. Resp't's Br., Ex. D, at 10. That respondent was unable to sign her admission forms at Lansdale Hospital on June 30, 2015, after falling that day, does not establish that respondent lacked capacity when she was admitted to Golden Living four days later. Respondent testified at her deposition that she "was so drugged" the day she was admitted to Golden Living that she had "no idea what [she] thought or felt." Killian Dep. 91:23–24. Her inability to remember what she thought or felt when she was admitted to Golden Living and her memory problems at the time of her admission were not "total or so extended to make incapacity practically certain." *See Taylor*, 415 A.2d at 897. Moreover, that testimony is insufficient to establish with "clear, precise and convincing" evidence that she could not "comprehend the contract." *See McGovern*, 517 A.2d at 525 (quoting *Law v. Mackie*, 95 A.2d 656, 653 (Pa. 1953)); *Elliott*, 204 A.2d at 273. Finally, respondent's need for assistance with decisions at the time of her admission to Golden Living and the fact that she presented as "alert and oriented . . . with some confusion" the next day fail to transcend "mere weakness of intellect from sickness or old age," which are insufficient to establish lack of capacity. *See id.*

Morgan's deposition testimony further belies respondent's incapacity defense. According to Morgan, respondent did not seem to be taking any medication that was interfering with her ability to understand what Morgan was saying the day she was admitted to Golden Living. Morgan Dep. 73:4–8. Morgan also testified that respondent "seem[ed] to understand what [Morgan was] talking about" and engaged in conversation. Morgan Dep. 74:12–22. Ultimately, respondent has failed to demonstrate with "clear, precise and convincing" evidence that she was unable "to comprehend the contract." *See McGovern*, 517 A.2d at 525 (quoting *Law*, 95 A.2d at 653); *Elliott*, 204 A.2d at 273.

**B. Unconscionability**

"To prove unconscionability under Pennsylvania law, a party must show that the contract was both substantively and procedurally unconscionable." *Quilloin*, 673 at 230 (citing *Salley v. Option One Mortg. Corp.*, 592 A.2d 115, 119 (Pa. 2007)). The Pennsylvania Supreme Court stated that a "sliding-scale" approach may be appropriate: "for example, where the procedural unconscionability is very high, a lesser degree of substantive unconscionability may be required." *Salley*, 925 A.2d at 125 n.12. "The party challenging a contract provision as unconscionable generally bears the burden of proving unconscionability." *Harris v. Green Tree Financial Corp.*, 183 F.3d 173, 181 (3d Cir. 1999) (citing *Bishop v. Washington*, 480 A.2d 1088, 1094 (Pa. Super. 1984)).

1. Procedural unconscionability

A contract is procedurally unconscionable "where there was a lack of meaningful choice in the acceptance of the challenged provision and the provision unreasonably favors the party asserting it." *Salley*, 925 A.2d at 119. "A court must consider the following factors: (1) the '"take-it-or-leave it" nature of the standardized form of the document;' (2) the 'relative

9

bargaining positions' of the parties; and (3) 'the degree of economic compulsion motivating' the signatory." *Ggnsc Camp Hill West Shore, LP v. Thompson*, Civ No. 1:15-445, 2016 WL 3418490, at *4 (M.D. Pa. June 22, 2016) (quoting *Quilloin*, 673 F.3d at 235–36 (quoting *Salley*, 925 A.2d at 125)).

Respondent argues that the ADR Agreement is procedurally unconscionable because it is a contract of adhesion. *See Alexander v. Anthony Intern., L.P.*, 341 F.3d 256, 265 (3d Cir. 2003) ("[Procedural unconscionability] is generally satisfied if the agreement constituted a contract of adhesion."). The Court disagrees with respondent on this issue. In *Thompson*, the court held that respondent's evidence was insufficient to support a finding that the same ADR agreement at issue in this case was procedurally unconscionable. *Thompson*, 2016 WL 3418490, at *5. The ADR Agreement states in bold capitalized lettering that it "is not a condition of admission to or continued residence in the facility." Pet'rs' Mot., Ex. D, at 2. Furthermore, a resident can revoke the agreement by sending written notice to the facility within thirty days of signing it. Pet'rs' Mot., Ex. D, at 6. The agreement thus lacks the "take-it-or-leave-it" quality of a contract of adhesion. *See Thompson*, 2016 WL 3418490, at *5; *Golden Gate Nat'l Senior Care, LLC v. Sulpizio,* No. 1:15-CV-174, 2016 WL 1271333, at *6 (M.D. Pa. Mar. 31, 2016); *Clouser v. Golden Gate Nat'l Senior Care, LLC,* No. 3:15-33, 2016 WL 1179214, at *7 (W.D. Pa. Mar. 23, 2016). The agreement is short—four pages not including blanks—and plainly-worded. Pet'rs' Mot., Ex. D. Finally, respondent does not present any evidence of economic compulsion. The Court thus finds that there is no genuine issue of material fact regarding procedural unconscionability and concludes that respondent has not met her burden of demonstrating that the Agreement was procedurally unconscionable.

2. Substantive unconscionability

The Court also concludes that respondent has not met her burden of establishing that the ADR Agreement was substantively unconscionable. "A contract or provision is substantively unconscionable where it 'unreasonably favors the party asserting it.'" *Quilloin*, 673 F.3d at 230 (quoting *Salley*, 925 A.2d at 119). An arbitration agreement is not substantively unconscionable if it "does not alter or limit the rights and remedies available to [a] party in the arbitral forum." *Id.* Respondent argues that the ADR Agreement is substantively unconscionable because it reserves access to the courts for petitioners and because the JAMS rules restrict respondent's ability to vindicate her claims by limiting discovery and imposing an undue financial burden.

The ADR Agreement does not reserve access to the courts only for petitioners. Excepting only small claims, the Agreement requires arbitration of "all claims in law or equity arising from one Party's failure to satisfy a financial obligation to the other Party; a violation of a right claimed to exist under federal, state, or local law or contractual agreement between the Parties; tort; breach of contract; consumer protection; fraud; misrepresentation; negligence; gross negligence; malpractice; and any alleged departure from an applicable federal, state, or local medical, health care, consumer or safety standards." Pet'rs' Mot., Ex. D, at 4. The ADR Agreement does not preclude the parties "from seeking remedies in small claims court for disputes or claims within its jurisdiction. Pet'rs' Mot., Ex. D, at 4. In short, the agreement does not reserve access to the courts only for petitioners.

Furthermore, the application of the JAMS rules in arbitration does not render the Agreement substantively unconscionable. *See Thompson*, 2016 WL 3418490, at *6; *Sulpizio,* 2016 WL 1271333, at *5; *Clouser*, 2016 WL 1179214, at *7. The selection of JAMS rules, which provide for more limited discovery than what is available in courts, is intended to promote

11

"speed, efficiency, and cost-effectiveness of the ADR process." Pet'rs' Mot., Ex. D, at 2. Like in *Sulpizio*, respondent "has failed to point to any caselaw finding that the JAMS process or rules render an arbitration agreement substantively unconscionable." *Sulpizio*, 2016 WL 1271333, at *4.

The Court also concludes that the JAMS rules do not impose an undue financial burden on respondent. The ADR Agreement limits respondent's fees for initiating an arbitration proceeding against petitioners to $250, "which is approximately equivalent to a court filing fee." Pet'rs' Mot., Ex. D, at 6. "[A]ll other fees and costs . . . shall be paid by [Golden Living]." Pet'rs' Mot., Ex. D, at 6. Respondent points to the provision of the agreement that permits the arbitrator to "allocate all or part of the costs of the arbitration, including the fees of the arbitrator and the reasonable attorneys' fees of the prevailing party." Pet'rs' Mot., Ex. D, at 6. The Court agrees with other courts which have held that this provision is insufficient to support a finding that an arbitration agreement is substantively unconscionable. *See Thompson*, 2016 WL 3418490, at *6; *Sulpizio,* 2016 WL 1271333, at *5; *Clouser*, 2016 WL 1179214, at *7; *Golden Gate National Senior Care, LLC v. Beavens*, 123 F.Supp.3d 619, 631 (E.D. Pa. 2015). The Court thus concludes that respondent has not met her burden of showing that the ADR Agreement is substantively unconscionable.

### C. Conclusion

There is no genuine issue of material fact regarding respondent's capacity to contract at the time she signed the ADR Agreement. Respondent failed to present "clear, concise and convincing" evidence that she lacked capacity "to comprehend the contract." *See McGovern*, 517 A.2d at 525 (quoting *Law*, 95 A.2d at 653); *Elliott*, 204 A.2d at 273. The Court further concludes that respondent failed to meet her burden of demonstrating that the ADR Agreement

was procedurally and substantively unconscionable. Accordingly, the Court rejects respondent's defenses and concludes that the ADR Agreement is valid and enforceable.

## VII. CONCLUSION

For the foregoing reasons, Petitioners' Motion to Compel Arbitration is granted. Respondent shall arbitrate the claims that she filed in the Montgomery County Court of Common Pleas, Docket No. 2017-10000. The Court enjoins the parties from proceeding further in the Montgomery County case, other than as necessary to stay the case pending the completion of arbitration. That part of the Petition for Order Compelling Arbitration, Staying Improperly Commenced State Court Proceedings, and Granting Declaratory Relief seeking a declaratory judgment is denied as moot on the grounds that declaratory relief is not addressed in Petitioners' Motion to Compel Arbitration and the fact that such relief is redundant.

An appropriate order follows.